Case number 22-1203, Michael Sullivan v. LG Chem LTD. Arguments not to exceed 15 minutes per side. Mr. Granzato, you may proceed for the appellant. Good morning. Mark Granzato on behalf of the plaintiff appellant. I have requested three minutes for rebuttal. Fine. This is a product liability action brought arising out of an injury that occurred in Michigan, filed against a Korean manufacturer. The district court in this case dismissed this case on the basis of a lack of personal jurisdiction. The district court's opinion in the case is interesting in one very important respect, and that is, as the court knows, there are at least theoretically two components to personal jurisdiction. One is the existence of or the application of a state statute, a long-arm statute. And the other thing is that the exercise of jurisdiction must comport with due process. The trial judge in a decision in this case determined that there was due process. The exercise of jurisdiction would in fact comport with due process. The trial court then turned to the question of the Michigan long-arm statute and determined that it did not apply to these facts, and on that basis dismissed the case. Much of what the trial judge cited in their decision dismissing the case on the long-arm statute was the failure of the plaintiff's attorney to make a particular argument on the long-arm statute. That is, in fact, the first argument that the defendant has made here in response, that in fact the long-arm statute was waived by the plaintiff. To understand why that's not so, let's go back to the beginning of this. The defendant filed a motion based on 12b-2, and the plaintiff responded to it. The plaintiff first acknowledged that they would have to establish that the long-arm statute applied. As you perhaps know, the plaintiff cited the appropriate statute but quoted the inappropriate statute. Michigan has eight long-arm statutes. The plaintiff's attorney, in response, did not concede that the long-arm statute didn't apply. But the motion that the defendant filed proceeded to a hearing. That hearing occurred on November 3. At that hearing, the trial judge first identified the appropriate Michigan long-arm statute that applied. Which is 600.715. That's correct. It is what the Michigan statute refers to as limited personal jurisdiction applicable to corporations. The trial judge identified that correctly and then proceeded to quote from one of this court's opinions on the relationship in Michigan law between the long-arm statute and due process. And what the court said, quoting this court, when a state's long-arm statute reaches as far as the limits of the due process clause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process. After that, the plaintiff, of course, concurred with that statement by the court. The defendant did not directly concur with it. But the point is, after that statement was made by the court, the rest of the hearing that took place on that day was addressed solely to the question of due process. The court, at the conclusion of that hearing, requested supplemental briefs and allowed some jurisdictional discovery to allow plaintiffs to go into the context that LG Chem had, in fact, with the state of Michigan. After that limited amount of discovery was taken, the parties filed supplemental briefs. Now, the plaintiff's supplemental brief, at that point, having been instructed by the court that the inquiries, the dual inquiries were, in fact, merged, they were, in fact, one and the same, did not address the question of the reach of Michigan long-arm statute in the supplemental brief. But the question, of course, becomes, why would the plaintiff have addressed the question of the long-arm statute when the trial court had advised the parties at the hearing that they were, in fact, merged, these two questions were, in fact, merged? I'm worried you're going to use your time up on this procedural matter without getting to the substance of the long-arm statute and whether it, in fact, reaches this far. Because that is where the district judge, in the end, ruled against you. That's correct. That's correct. But the issue of waiver should not be, there was a little bit, I would think, from the plaintiff's perspective, of a bait and switch here, if you will. The trial court had advised the parties that, in fact, they were one and the same. And, by the way, this Court's decisions, and I have two judges sitting in front of me today who have opined on the relationship between the Michigan long-arm statute, Judge Gibbons and Judge Moore, and both of you have acknowledged what the trial court told the parties at that November 3 hearing, that is that the Michigan statute reaches the extent of due process. Therefore, the only consideration that was before the Court that was worth talking about when the parties submitted their supplemental brief was, in fact, due process. Well, arguably, now, the district judge has said that this long-arm statute, 0.715, is not satisfied. So how can you win without overturning that particular part? Can you address that in the limited time that you have? The fact is that the long-arm statute has been misconstrued by both the trial court and the defendants in this case. The Michigan long-arm statute, as it applies to corporations, is incredibly broad. The defendants in this case have taken two words that are contained in that statute, those three words, arising out of, and they have tried to construct, tried to incorporate into the Michigan long-arm statute the same sort of causation thing that the United States Supreme Court recently discussed at some length in the Ford v. Montana Judicial District case. But in Ford, there was the relate to language, whereas the Michigan statute, arising out of the act or acts which create the relationship. So how can you win on that? The defendants have taken the position that that arising out of language means there has to be a connection between the cause of action that the plaintiff has filed and the various components of the Michigan long-arm statute. That is completely incorrect. The fact is that the Michigan long-arm statute is written in such a way that the arising out of language has nothing to do with the cause of action or its relationship to the state of Michigan. The arising out of language of 715 says arising out of the acts or acts which create the following relationships. So it's the relationships that have to exist. So if you go down to number sub 1, it says the transaction of any business in this state. What the defendants have tried to do in this case, and they convinced the district court of this, is that the transaction of any business in this state on sub 1 has to include the transaction of any business in this state that the cause of action arises out of. That is not what 7151 says. It is completely, completely divorced from the concept of causation. And the Schneider case that I've cited in a footnote of Michigan Supreme Court case is a perfect example of this. Because in Schneider, what happened is you had a New Jersey resident getting into an accident with a Michigan resident in Indiana. And the Michigan Supreme Court predicated its determination that personal jurisdiction existed on the basis of another subsection. They were dealing with a different statute, but it's the same language. Sub 3 of 715 says the ownership, use, or possession of any real or tangible property. So in Schneider, the Michigan Supreme Court ruled that a Michigan resident could sue a New Jersey resident for an accident that occurred in Indiana precisely because the New Jersey resident owned property in Michigan. That is the determination of the Michigan Supreme Court. There is no causation element. Was it the property that was involved in the accident? No, it was an automobile accident. And the property was real property? Real property located in the city. And the defendant suggested that there are some other circumstances, but the fact is the Michigan Supreme Court in the case cites that as a basis for it. But even if, and again, there's no causation element in sub 1, but even if there were one, sub 2 completely takes care of this case because sub 2 is a provision of the Michigan long arm statute that is applicable solely to tort claims. And it says specifically that the doing or causing of any act to be done or consequences to occur in the state of Michigan resulting in an action in tort gives rise to a long arm jurisdiction. This is a tort case. It is a tort case in which the plaintiff was injured in Michigan and the allegations in the complaint are, in fact, that a product manufactured by a Korean company caused an occurrence in this state, injury to. Okay, so I am having a little bit of trouble following your example here. If we're looking at sub 2, consequences to occur in the state, the consequences here were that the battery burned Mr. Sullivan in the state of Michigan. And he happened to have bought this battery or his wife bought this battery in the state of Michigan. So where does the arising out of pertain? Well, it's in the statute. So how can you say it doesn't apply? Go to the lead in language. I am looking at it. The arising out of the acts which create the following relationships. Okay, did the defendant do anything? Did it cause an act to be done? Did it manufacture a product? Did it manufacture a product that caused consequences to occur that resulted in a tort in the state of Michigan? That's how broad the Michigan long arm statute is with respect to tort claims. That's the point. And it's a point which I think this court has graphed in the past. Because this court has said that there is no reason to look at the Michigan long arm statute where you satisfy the requirements of due process. Judge Gibbons, you said it in the MAG IAS case. So hypothetically, if the only battery that ends up in Michigan from LG Chem, the only one, hypothetically, is the one that causes Mr. Sullivan's harm, would he still need the long arm statute of Michigan? Yes. That is the point. Because the key is so broad. And, in fact, sub one is probably broader. Because sub one doesn't confine itself to tort. It says the transaction of any business. But in my hypo, and I know this is not your case, in my hypo, somehow the battery ends up in Michigan. Yes. And it burns Mr. Sullivan. And it is an LG Chem battery. Then, in my hypo, LG Chem wouldn't be transacting any business in the state. That's correct. Okay. But you would say, nonetheless, even if Mr. Sullivan bought the battery in New Jersey and carried it with him to Michigan, if it burns him in Michigan, and LG Chem has nothing to do with Michigan other than that the battery ended up in his pocket in Michigan, the long arm statute would allow LG Chem to be sued in Michigan. And that's why, when you are dealing with a tort action involving a person who gets injured in Michigan, it is only due process that you look to determine whether personal jurisdiction does, in fact, exist. That's what this court has said, and that's why. Because this long arm statute, it doesn't say to the extent of due process, like some long arm statute says, but the language of this statute is so broad, it encompasses everything. It is only dependent on due process concerns. Thank you. Thank you. Excuse me. Good morning, Your Honors. May it please the Court. Rachel Headley for the defendant, Appelli, LG Chem Limited. Your Honors, I want to just very briefly touch on the waiver issue. I'm not going to spend a lot of time on it. Again, our position is that the order should be affirmed and that the Court's decision really is an easy one because the long arm statute was simply not presented to the district court, and therefore it's been waived. And none of the exceptions apply. Plaintiff did not put in a reply brief on appeal, did not address any exception, other than seeming here at oral argument to be casting the blame for not raising that issue on the district court's comments at the hearing. I think it's well covered in our brief, and unless there's questions on the waiver, I'd like to spend my time on the other issues. I only want to make one point about that waiver issue, is that the statement of issue on appeal says that the district court made a mistake by finding that the long arm statute was not satisfied. That wasn't the finding. The district court said, I don't need to find this because the plaintiff didn't argue it. So I also want to just briefly correct the assertion that at the hearing there was a bait and switch, I think is the language my friend at the bar used, that the defendant did not directly concur with the district court statements about the two being the same. That's not what happened. The district court said, does everybody agree these are the same? Counsel for LG Chem, who was me, said, no, we don't agree with that. We think they're different, but we're happy to discuss the due process issue here at the oral argument, and in particular because the plaintiff had never put in any arguments about it. So I don't know why I would go into court and argue against a position that was never raised in any event. So the due process issue is what the district court was concerned with. But nevertheless, again, going through the briefs, we've cited all the times that we repeatedly brought up 600.715. Is there a problem that we have these Sixth Circuit cases that say that the long-arm statute goes to the full extent of due process? And so we have perhaps led people to think that all that needs to be done is to think about due process. So I appreciate the question, and that is one of the things that I wanted to talk about. Because, for example, I think there was a lot of emphasis on the Alix Partners case by the Sixth Circuit. And in that case, though, the court said that the defendant concedes that the long-arm statute is satisfied. So we don't need to talk about it. And that's one of the cases that's been relied on for this sort of potentially confusion. I think also that because it is a question of state law, the state appellate courts control. And in this case, clearly, in the Green case, is the last time, I believe, the last time that the Michigan Supreme Court has spoken anything about this particular long-arm statute section, 600.715, in 1997. And it very eloquently explained the difference between the type of statutes that extend fully and collapse into the due process inquiry and the other type of statutes. The other thing I want to talk about with regard to that is part of this could be that, and I'll get to the due process issue in a second, but before the Ford decision, the United States Supreme Court had a decision about, many decisions about specific jurisdiction. One was Bristol-Myers. But when Ford petitioned the Supreme Court, Ford said, look, the different circuit courts here are applying and interpreting the sort of relatedness element differently, right? And in the Sixth Circuit, it was one of the courts that had the second test for due process was the arising out of. First, there was purposeful availment, and then there was the arising out of. So the Sixth Circuit had approximate cause requirement. And I want to come back to that because prior to Ford, and at the time, for example, ALEC's partners was decided, it may have been that in the practical application, very often these inquiries did look the same because Michigan was causal and the Sixth Circuit required causal. But it doesn't change the fact that how the Ford decision may have changed the way the Sixth Circuit looks at the due process discussion, and I'll come to that. But it doesn't change the Michigan long-arm statute. It can't change the Michigan long-arm statute. And that very clearly has this causal component. Okay, so getting to that. Yes. Your opponent has argued that if a LG Chem, this is a hypo, if an LG Chem battery ends up in somebody's pocket in Michigan and they are severely burned, that LG Chem should be able to be sued in Michigan under the long-arm statute. Why is that wrong? So the reason I disagree with that is because it depends on how that battery got into Michigan. And so some of the cases that we've talked about in our brief, and particularly the Woods versus Edgewater amusement and the Belkey case, both were situations where you had a foreign defendant manufacture a product that ultimately, allegedly injured someone in Michigan. But in both of those cases, and potentially in this hypothetical, you have a chain of distribution where the defendant has a distributor or an intermediary, as was the case in the Woods case, sending that product into the state. And so there is that proximate cause. How did the injury occur in Michigan? I think my friend at the bar used the language that the Michigan long-arm statute is completely divorced from Michigan. How can that be? He was saying that if the consequences occur in Michigan. So the burning of the plaintiff occurs in Michigan. And I'm not looking at the due process. I'm looking at the statute. He says that this meets 715 parens 2 because the consequences occurred in this hypo in Michigan. Right, and so the statute says arising out of the act. And in subsection 2, it's the doing or causing any act to be done in the state. So I don't see how if the foreign, the alleged manufacturer. You missed the consequences to occur. The doing or causing of any act to be done or consequences to occur. And the consequences here are the battery exploding in his pocket. Yes, Your Honor, but it also includes the next words in the state. And it happens in my hypo in Michigan. Right, but the question is whose act is it arising out of that it's occurring in the state? And my argument, and again. I'm truly befuddled by this statute, so I'm not trying to be difficult. Arising out of the act or acts which create any of the following relationships. Consequences to occur in the state. So the consequences did occur in the state in the hypo. And I'm trying to make it a simple hypo so that we can just see the extent of this long-arm statute. Well, but in my answer to your hypothetical, it depends on how that battery got there. So if the defendant was the manufacturer, sold it to an intermediary, a store, an online store, whatever it may be, sold it to someone that then sold it to the plaintiff, and it got into Michigan and it happened in Michigan, and there was that proximate relationship connecting that defendant, that manufacturer, to Michigan, then I would agree the long-arm statute was satisfied. But that's not what happened here, and I think that's important. And I do want to just briefly talk about in the Schneider case where I think Your Honor asked whether what was the connection, what was the business. But as we put in our brief, and I've got the case right here in front of me, it was not that there was real property in Michigan. It was the car. It was that the car involved in the accident had been titled in Michigan, owned in Michigan, licensed in Michigan. And so the connection to Michigan was this car that these people who were Michigan residents, they owned personal property that they licensed and maintained. That car was in Michigan. And so, again, there's still some connection. And I believe that the Michigan long-arm statute requires that the connection with the forum state must in some way be formed by the defendant. There must be that causal relationship so that the defendant, even if it is a product manufacturer. What is missing here is the evidence as to how the batteries, even though the shipping was to Michigan, how they actually got there. That is missing, but I appreciate the question, Your Honor, and I would like to address that. Because what's another thing that's important, and I know I have very limited. I'll state your position correctly. I'm sorry. That is correct, that my position is it matters how it got into the state for the purposes of the long-arm statute and in another way for due process, which I'll come to. But one of the things that was at issue here is that at the hearing, the district court said, I'm curious about everything that happened for this four-year time period, 2016 to 2020. And LG Chem said, well, okay, we'll give what Your Honor would like, but we object that anything after the incident is just not relevant. And particularly when we're talking about this causal relationship, it's just not relevant. But we'll answer the discovery. But in any event, the incident in this case occurred in October of 2018. The plaintiff filed a lawsuit in November of 2018, which is not this lawsuit. It was a prior lawsuit. LG Chem moved to dismiss, and then for lack of personal jurisdiction, the plaintiff dropped the suit. This lawsuit was filed two years later. The reason I bring that up is because in that prior lawsuit, and this is covered in our briefing, but I want to draw attention to it. In that prior lawsuit, the plaintiff alleged that his wife had bought the battery at a vape store and that the vape store knew that it was not supposed to be selling that battery to consumers and that the vape store was on notice that it was selling it in contravention of the manufacturer's instructions and warnings and also that the battery had been rewrapped and was sold as a knockoff. And those were quotes out of the prior complaint to remove warning language saying, we're not selling these to consumers, consumers should not be buying these. That wasn't the original complaint. When the plaintiff filed... I don't understand whether that gets to the merits of the case as opposed to whether there's personal jurisdiction over LG Chem. So the way it just comes to the personal jurisdiction argument and to answer Judge Gibbons' question, how did it get here, I don't know how it got into Michigan. That's information that would be in the hands of the vape store and even the plaintiff who filed another lawsuit and named that vape store in that first lawsuit dismissed us. We don't know what happened between the plaintiff and the vape store, but the vape store knows who they bought it from. All we know is they did not buy it from LG Chem because LG Chem did not supply that chain of distribution. That is not a disputed fact. That is something that plaintiff's counsel conceded and agreed without the hearing, that he understands that LG Chem is not supplying this market and somebody else is doing it. There have been dozens of suits against LG Chem for dozens of people who have had these batteries in their e-cigarettes and where the batteries have burst into flames in their pockets. So I am curious where LG Chem can be sued. On a claim of this type where a plaintiff says, I bought a battery from a vape store, carried it around in my pocket, put it in my vaping device and it exploded, whatever, something of that nature in that type of a suit, Korea. That is my answer. So Korea, that is the only place LG Chem can be sued in your... That was our position, Your Honor, and many courts have agreed with me on that point. And most recently... Well, I think most of the courts, at least I was reading about a dozen of these cases yesterday, most of the courts say not in our place, not in Missouri. But they are not saying you have to go to Korea. And I am just curious if you, representing LG Chem, can tell us that there is any place in the U.S. where these plaintiffs can go or is it that they all have to go to Korea? Well, I understand that. And, of course, I don't create the law, of course. The United States Supreme Court creates the law. And the law says that it is the forum context that matters. And so in any given case, of course, the issue before the court is, is it this forum? Now, there have been some cases where... But your answer, just to clarify then, is only Korea. You are not coming up with any place in the U.S.? My answer is that LG Chem does not supply 18650 battery cells to anyone, anywhere, to sell to consumers as standalone batteries. If they're getting into the hands of a consumer through a vape store in Michigan or in California or anywhere else, that is not because of any relationship that LG Chem formed with that state because LG Chem is not supplying that market. And that's the basis for my saying that there is no such state. Again, we're now getting into more facts than in my hypo. But the facts here are that LG Chem did sell a lot of this number 18,000, et cetera, batteries in Michigan. I disagree. For a vacuum cleaner company. There was one that was a vacuum cleaner company. And there was another where the sale was of like 50,000-pound shipment of batteries into Michigan, to a Michigan subsidiary. I see that I only have two minutes left, and I want to make sure to come to the due process, but I want to answer Your Honor's question because I don't agree with the characterization of a lot of sales. So there was one shipment of these cells. It was 100 cells. It was a sample shipment that went to a vacuum cleaner manufacturer who wanted to see about using them in the vacuum cleaner with protective circuitry. One thing in talking about some of the other lawsuits out there, I know that the Court may be aware that the Ninth Circuit is the only federal circuit court that has weighed in on the due process issue in the Yamashita case, which had not been decided at the time our brief was filed. But on March 6, 2023, the Ninth Circuit weighed in and agreed that the relatedness element is not satisfied, due process is not satisfied. Following that, some district courts, including one in California called Quinones in the state of California, which I only bring up because in California, LG Chem does have customers for these 18650 cells, equipment manufacturers, and they're selling an extensive volume, and that is a matter of the record in those cases, but not in Michigan. But in terms of Michigan, according to the district court, the court considers a 50,000-pound shipment of 18650 batteries to a subsidiary. But that shipment, first of all, there was no discovery about that and there's no admissible evidence covering what that is, except to say that it was a battery pack, not individual cells. Battery packs could be the size of a desktop and they can power like a city bus, for example. And then there are supposedly two, again, I'm reading from the district court, two supplier agreements that LG Chem executed with Michigan companies relating to 18650 batteries, which said that they would be considered to be a contract made and performed in the state of Michigan and had a Michigan forum selection clause. So the combination of those was enough for the district court to say due process would be satisfied. I see that I'm out of time. Maybe we have just a little bit of time to respond in the due process. Thank you, Your Honor. So first of all, and again, coming back to, again, on the Michigan long-arm statute arising out of, I just don't see how you can look at something that occurred two years after the incident. I would argue that you can't look at something that occurred two years after the incident even for due process. So I don't think those agreements that were reached later should matter. But even if they did, this court has held that the simple fact of forming a relationship or a contract with a company in Michigan does not satisfy necessarily due process. And, again, it was shipping battery packs, not batteries, but battery packs to Arizona. Not a single one of those was shipped into Michigan. And all of that occurred at the earliest almost a year after the incident. That contract, I believe, was signed in August of the following year. And then the shipments were thereafter. And if I could just maybe have 30 seconds on the due process. Thank you. I appreciate it.  If the fact that a product, an event at manufacturers, arrives in the forum, if that simple fact is enough to satisfy due process, that can't possibly be the case, because otherwise Bristol-Myers would have turned out differently. Well, Bristol-Myers involved plaintiffs who were not related to the state. That's correct, Your Honor. They were non-residents. But nevertheless, the defendant still had extensive contacts with the forum state for the product. And then when you move on and look at what Ford said, Ford was very clear and said, some courts have got this wrong and thought there was a causal element. It's not causal. It arises out of or relates to. But that phrase relates to has real limits. It does not mean anything goes. And plaintiff had conceded here at the oral argument that LG Chem is not like Ford. Ford had a dealership on every corner. And maybe that one particular car didn't get into the state because Ford put it there, but so many other of the same type of cars did, advertising, urging consumers to buy them. That did not happen with LG Chem. LG Chem was not supplying these sales to consumers, was not part of the chain of distribution that led into the state. And that is why the vast majority of federal courts, including most recently the Ninth Circuit, that have considered similar issues have concluded that the relatedness element of the due process inquiry cannot be satisfied. But, again, I appreciate you allowing me to go over time to answer your questions. Our argument is that none of this was presented to the district court and, therefore, it is waived. And the Michigan long-arm statute is not satisfied, although the district court made no findings, and this is a court of review, not a court of first instance. And, finally, to the extent the court reaches the due process question, the relatedness element cannot possibly be satisfied, and the court should affirm the decision dismissing LG Chem for lack of personal jurisdiction. Thank you. I will confine myself to the determination the trial court made with respect to the long-arm statute. The suggestion has been made here that the Michigan Supreme Court's decision in Green reflects that there is some sort of substantial difference. You have to understand, Green was a situation in which the defendant got drunk in Michigan, but then he drove to his home in Windsor, where he caused an accident. So Sub 2 was not at issue in the Green case. That is very important here. It was not a tort case in which the plaintiff could come within Sub 2. But in terms of Sub 2 and the occurrence within the state of Michigan, look at the Woods case from the Michigan Supreme Court and look at the Belkey case, the federal district court case. Because in the Woods case, you have the Michigan Supreme Court on a case in which I think it's a Florida manufacturer sells to somebody in New Jersey who ends up selling a product in Detroit, and that product ends up being the subject of a product liability action. So you have a Florida person, no direct connection to the person in Michigan, yet there's no difficulty with the Michigan Supreme Court finding Sub 2, the tort provision, the massive tort provision of the Michigan long-arm statute, to be satisfied in that case. Belkey is another case, a federal district court case, that's worth looking at in terms of the breadth of Sub 2. Because in Belkey, you had an Italian manufacturer who didn't sell to Michigan. He sold to somebody, I believe in Canada somewhere, who ends up shipping it to Michigan. And yet, when that product causes an injury in Michigan, the federal district court, citing Woods, has no difficulty under Sub 2 saying this is something that the Michigan long-arm statute applies to. This court has, on multiple occasions, said that when you're dealing with the Michigan long-arm statute, and particularly in tort cases, all you have to worry about is due process. And the reason for that, even if you haven't said it directly, the reason for that is the Michigan long-arm statute is so encompassing when it comes to tort actions. It covers everything that occurs in the state of Michigan that harms a Michigan, well, it doesn't have to be a resident, just has to be in Michigan. That's how vast this long-arm statute is. And that's why this court has repeatedly said, in tort cases and otherwise, when you're dealing with the Michigan long-arm statute, you have to only look to due process, because that is the more rigorous standard. And the defendants here are trying to incorporate a causation component that's basically the second element of this court's test. They're trying to incorporate that into the Michigan long-arm statute, and that's not what it says. Thank you. Thank you both for your argument. The case will be submitted.